UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FELIPE LUNA,<br><br>              Plaintiff,<br><br>      v.<br><br>FCA US LLC, et al.,<br><br>              Defendants. | Case No. 21-CV-01230-LHK<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**<br><br>Re: Dkt. No. 18 |

Plaintiff Felipe Luna ("Plaintiff") brings this lawsuit against Defendant FCA US, LLC ("FCA"), and Does 1 through 10 for claims arising from the sale of an allegedly defective vehicle. Before the Court is Plaintiff's motion to remand. ECF No. 18. Having considered the parties' submissions, the relevant law, and the record in this case, the Court DENIES Plaintiff's motion to remand.[1]

---

[1] Plaintiff again violates Civil Local Rule 7-2(b), which provides that the notice of motion and the points and authorities in support of the motion must be contained in one document with a combined limit of 25 pages. *See* ECF No. 18; *see also Luna v. FCA US LLC*, No. 19-CV-08229-LHK, 2020 WL 3605554, at *1 n.1 (N.D. Cal. July 2, 2020) (explaining that Civil Local Rule 7-2(b) contains a single document requirement). The Court will strike Plaintiff's future filings that do not comply with the Civil Local Rules. *See* Civ. L.R. 1-4.

1
Case No. 21-CV-01230-LHK
ORDER DENYING PLAINTIFF'S MOTION TO REMAND

## I.   BACKGROUND

### A.  Factual Background

Plaintiff is a resident of Santa Clara County, California. ECF No. 1-2 ("Compl.") ¶ 2. FCA, a Delaware corporation operating in California, designs, manufactures, constructs, assembles, markets, distributes, and sells automobiles. *Id.* ¶ 4. Plaintiff alleges that on or about July 25, 2012 "Plaintiff purchased a 2012 Jeep Wrangler vehicle ... from [a dealership], which was manufactured and or distributed by Defendant FCA." *Id.* ¶ 7. When Plaintiff purchased the 2012 Jeep Wrangler (the "Vehicle"), Plaintiff "received an express written warranty, including a 3 year/36,000 miles bumper to bumper warranty and a 5 year/100,000 miles powertrain warranty, which covers the engine and transmission." *Id.* ¶ 8.

Plaintiff asserts that those warranties provided that "in the event a defect developed with the Vehicle during the warranty period, Plaintiff could deliver the Vehicle for repair services to Defendant's representative and the Vehicle would be repaired." *Id.* Plaintiff alleges that during the warranty period, the Vehicle developed "defects related to the electrical system; defects related to the totally integrated power module (TIPM); defects causing illumination of the check engine light ...; defects causing the storage of Diagnostic Trouble Codes ...; defects causing the Vehicle to surge above 2,500 RPMs; defects causing the failure and/or replacement of the powertrain control module ...; defects requiring the reprogramming of the skim key; defects related to the transmission; defects causing rough running; defects causing the failure and/or replacement of the oil filter; defects requiring the performance of Recalls ...; defects causing cylinder(s) misfire; defects causing the failure and/or replacement of the left side cylinder head; defects causing the failure and/or replacement of the lifters; defects requiring the reprogramming of the key; and/or any other defects described in the Vehicle's repair history." *Id.* ¶ 9.

Regarding the alleged defect related to the TIPM, Plaintiff states that FCA "had superior and exclusive knowledge of the TIPM defects, and knew or should have known that the defects were not known by or reasonably discoverable by Plaintiff." *Id.* ¶ 20. Plaintiff alleges that FCA "has never disclosed the TIPM defect to Plaintiff prior to the purchase of the Subject Vehicle or at

2
Case No. 21-CV-01230-LHK
ORDER DENYING PLAINTIFF'S MOTION TO REMAND

1   any point during ownership of the Subject Vehicle and Defendant FCA has never instructed its
2   dealerships to disclose the TIPM defect to drivers or potential purchasers or lessees of vehicles
3   equipped with the TIPM." *Id.* ¶ 95.

4   According to Plaintiff, "Defendant [FCA] and its representatives in this state have been
5   unable to service or repair the Vehicle to conform to the applicable express warranties after a
6   reasonable number of opportunities." *Id.* ¶ 119. Indeed, Plaintiff alleges that when Plaintiff
7   "presented the Vehicle to Defendant's representative," FCA "failed to commence the service or
8   repairs within a reasonable time and failed to service or repair the Vehicle so as to conform to the
9   applicable warranties within 30 days." *Id.* ¶ 125.

### B. Procedural History

On November 12, 2019, Plaintiff filed his complaint against FCA, Stevens Creek Chrysler Jeep Dodge ("Stevens Creek"), and Does 1-10 in California Superior Court for the County of Santa Clara. Compl. at 1. On November 18, 2019, Plaintiff served the complaint on the defendants. ECF No. 1, ("Notice of Removal") ¶ 3.

Plaintiff's complaint alleged six causes of action, five of which arise from California's Song-Beverly Consumer Warranty Act, California Civil Code §§ 1790–1795.8 ("Song-Beverly Act"): (1) violation of section 1793.2(d) against Defendant FCA, Compl. ¶¶ 118–23; (2) violation of section 1793.2(b) against Defendant FCA, *id.* ¶¶ 124–28; (3) violation of section 1793.2(a)(3) against Defendant FCA, *id.* ¶¶ 129–31; (4) breach of express written warranty in violation of sections 1791.2(a) and 1794 against Defendant FCA, *id.* ¶¶ 132–35; (5) breach of the implied warranty of merchantability in violation of sections 1791.1, 1794, and 1795.5 against Defendant FCA and Defendant Stevens Creek, *id.* ¶¶ 136–40; and (6) common law fraudulent inducement/concealment, *id.* ¶¶ 141–59.

On December 18, 2019, FCA and Stevens Creek removed Plaintiff's complaint to federal court alleging Plaintiff fraudulently joined Stevens Creek. *See Luna v. FCA US LLC*, No. 19-CV-08229-LHK, ECF No. 1 (N.D. Cal. Dec. 18, 2019). On February 3, 2020, Plaintiff filed a motion to remand. *See id.*, ECF No. 13. The Court granted Plaintiff's motion to remand on July 2, 2020.

3
Case No. 21-CV-01230-LHK
ORDER DENYING PLAINTIFF'S MOTION TO REMAND

*See Luna v. FCA US LLC*, No. 19-CV-08229-LHK, 2020 WL 3605554, at *7 (N.D. Cal. July 2, 2020).

On February 19, 2021 Defendant FCA removed Plaintiff's complaint to federal court, now alleging diversity jurisdiction existed after Plaintiff voluntarily dismissed Stevens Creek from the suit on January 22, 2021. *See Luna v. FCA US LLC*, 21-cv-01230-LHK, ECF No. 1, Notice of Removal (N.D. Cal. Feb. 19, 2021).

On April 9, 2021, Plaintiff filed the present motion to remand alleging Defendant FCA failed to establish subject matter jurisdiction because the amount in controversy was less than $75,000. *See* ECF No. 18 ("Mot."). Defendant FCA opposed the motion on April 23, 2021. ECF No. 19 ("Opp'n"). Plaintiff did not file a reply brief.

Plaintiff also requests judicial notice of five court filings in other federal cases. ECF No. 18-4, at 5-26 (Ex. A-E). The Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Public records, including judgments and other publicly filed documents, are proper subjects of judicial notice. *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007). Each of these documents is a public court filing and is therefore the proper subject of judicial notice. *Id.* Accordingly, the Court GRANTS Plaintiff's request for judicial notice of exhibits A-E. However, the Court does not take judicial notice of disputed facts therein. *See Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001) ("A court may take judicial notice of matters of public record . . . But a court may not take judicial notice of a fact that is subject to reasonable dispute.") (internal quotation marks omitted), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

On August 2, 2021, the Court concluded that this case was related to *Luna v. FCA US LLC*, No. 19-CV-08229-LHK (N.D. Cal. filed Dec. 18, 2019).

## II.     LEGAL STANDARD

A suit may be removed from state court to federal court only if the federal court would

4

Case No. 21-CV-01230-LHK
ORDER DENYING PLAINTIFF'S MOTION TO REMAND

have had subject matter jurisdiction over the case. 28 U.S.C. § 1441(a); *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."). If it appears at any time before final judgment that the federal court lacks subject matter jurisdiction, the federal court must remand the action to state court. 28 U.S.C. § 1447(c).

The party seeking removal "bears the burden of establishing" federal jurisdiction. *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009). "The removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)).

Federal subject matter jurisdiction exists when a case presents diversity of citizenship between the parties or involves a claim arising under federal law. *See Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1183 n.2 (9th Cir. 2002). For the Court to have federal question jurisdiction, the complaint must arise under federal law. 28 U.S.C. § 1331. Generally speaking, "[a] cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Hansen v. Blue Cross of Cal.*, 891 F.2d 1384, 1386 (9th Cir. 1989).

Under 28 U.S.C. § 1332(a)(1), federal courts have diversity jurisdiction over civil actions "where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." 28 U.S.C. § 1332. The statute "applies only to cases in which the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

**III.   DISCUSSION**

Plaintiff moves to remand this action to state court arguing the Court lacks diversity jurisdiction under 28 U.S.C. § 1332 because FCA has not shown that the amount in controversy requirement is satisfied. Mot. at 1-9. Plaintiff also alleges FCA is barred from removing the action under § 1446(c)(1), which imposes a one-year time limit on removal based on diversity jurisdiction. *Id.* at 9-10. The Court first addresses whether FCA is statutorily barred from

5
Case No. 21-CV-01230-LHK
ORDER DENYING PLAINTIFF'S MOTION TO REMAND

removing the suit and then whether FCA has sufficiently shown that diversity jurisdiction exists.

### A. Plaintiff Has Forfeited His Argument that FCA's Notice of Removal is Untimely.

Although it appears that FCA's Notice of Removal was untimely under 28 U.S.C. § 1446(c)(1), Plaintiff has forfeited the right to bring such a procedural challenge because Plaintiff's Motion to Remand was filed after 30 days after Defendant filed a notice for removal.

Plaintiff filed the initial complaint in California Superior Court for the County of Santa Clara on November 12, 2019. Notice of Removal at 1. On December 18, 2019, Defendant first removed the action to federal court, and the Court granted Plaintiff's motion for remand on July 2, 2020. *Id.* at 1-2. Defendant once again removed the case to federal court on February 19, 2021. *See* Notice of Removal.

Ordinarily, a defendant may not remove the matter based on diversity jurisdiction "more than 1 year after commencement of the action," absent a finding of bad faith by the plaintiff. 28 U.S.C. § 1446(c)(1). "Commencement in this context refers to when the action was initiated in state court, according to state procedures." *Fong v. Beehler*, 624 F. App'x 536, 537 (9th Cir. 2015) (quoting *Bush v. Cheaptickets, Inc.*, 425 F.3d 683, 688 (9th Cir.2005). Under California law, an action begins when the complaint is filed. *Id.* (citing Cal. Civ. P. Code § 350).

Here, the complaint was filed in state court on November 12, 2019. FCA does not argue, and no case law suggests, that the one year clock restarts if the action was removed and remanded after the filing of the initial complaint. *Cf. In re Roundup Products Liability Action*, 396 F. Supp. 3d 893, 900 (N.D. Cal. 2019) (holding that severing a case does not restart the one year clock with the filing of a post-severance complaint).

However, this time-limit restriction on removal is not a jurisdictional rule. *See Smith v. Mylan Inc.*, 761 F.3d 1042, 1044-45 (9th Cir. 2014). It is procedural, and thus can be forfeited. *Id.* Once a party forfeits such a procedural defect, a district court "lack[s] the authority to remand *sua sponte*." *Corona-Contreras v. Gruel*, 857 F.3d 1025, 1030 (9th Cir. 2017).

Federal statutes require that a timely motion to remand "on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice

6

Case No. 21-CV-01230-LHK
ORDER DENYING PLAINTIFF'S MOTION TO REMAND

of removal." *Resol Group LLC v. Scarlett*, No.: 14–CV–04402–LHK, 2014 WL 6766258, at *2 (N.D. Cal. Dec. 1, 2014) (quoting 28 U.S.C. § 1447(c)). When, as here, the motion for remand advances both a procedural and subject matter jurisdiction challenge, courts will still find that the procedural challenge was forfeited if the motion for remand was filed outside the 30 day window. *Id.* (finding Plaintiff forfeited the procedural challenge in a motion to remand that argued both a procedural and subject matter jurisdiction challenge); *see also JP Morgan Chase Bank, Nat'l Ass'n v. Godwin*, No. 2:18-cv-08211-AB (SK), 2018 WL 6382051, at *2 (C.D. Cal. Dec. 6, 2018) ("Plaintiff's failure to file its motion to remand within the 30-day statutory period results in forfeiture of his procedural objections to removal.").

As FCA notes, Plaintiff filed the motion for remand on April 23, 2021, ECF No. 19, over two months after FCA filed its Notice of Removal on February 19, 2021, ECF No. 1. Accordingly, Plaintiff's procedural challenge is untimely under § 1447(c).[2] *See Resol Group LLC*, 2014 WL 6766258, at *2; *JP Morgan Chase Bank, Nat'l Ass'n*, 2018 WL 6382051, at *2. As such, Plaintiff has forfeited the right to bring such a procedural challenge. Perhaps in recognition of his forfeiture, Plaintiff failed to file a reply in support of the instant motion to remand and thus failed to respond to FCA's argument that Plaintiff had forfeited his argument that FCA's Notice of Removal is untimely.

**B. The Court Has Diversity Jurisdiction Over the Instant Case.**

The Court may nevertheless consider Plaintiff's motion to remand to the extent the motion challenges the Court's subject matter jurisdiction over this action. *See Resol Group LLC*, 2014 WL 6766258, at *3. Federal courts have diversity jurisdiction over civil actions "where the matter in controversy exceeds the sum or value of $75,000 ... and is between ... citizens of different States." 28 U.S.C. § 1332(a)(1). Plaintiff's motion to remand argues that the Court lacks diversity jurisdiction over this case because FCA has failed to demonstrate that the amount in controversy

---

[2] Because the Court concludes Plaintiff's procedural challenge is untimely, it need not reach FCA's argument that Plaintiff's inclusion of Stevens Creek as a defendant was in bad faith under 28 U.S.C. § 1446(c)(1).

1 exceeds $75,000.³ The Court disagrees.

2     A removing defendant has varying degrees of proof to show the amount in controversy is sufficient to meet the federal jurisdictional threshold. *Guglielmino v. McKee Foods Corp*, 506 F.3d 696, 699 (9th Cir. 2007). If the state court complaint "alleges on its face an amount in controversy sufficient to meet the federal threshold, such requirement is presumptively satisfied unless it appears to a 'legal certainty' that the plaintiff cannot actually recover that amount." *Id.* Conversely, where it is not facially evident from the complaint that the $75,000 amount in controversy was satisfied at the time of removal, a defendant must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold. *Id.* When first filing a notice of removal, a defendant "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89, (2014) (citing 18 U.S.C. § 1446(a)). However, "[e]vidence establishing the amount is required by § 1446(c)(2)(B) ... when the plaintiff contests, or the court questions, the defendant's allegation." *Id.*

    Here, FCA argues that the amount in controversy exceeds $75,000 for two reasons. First, FCA contends that Plaintiff alleges actual damages of at least $25,000.01 and additional civil penalties of twice the actual damages, for a total of over $75,000 on the face of the complaint. Opp'n at 7-10. Second, FCA includes additional evidence it argues shows by a preponderance of the evidence that the total amount in controversy is significantly higher than $75,000. Opp'n at 10-16. The Court addresses each argument in turn. The Court first concludes that based on Plaintiff's pleadings the amount of damages is not clear from the face of the complaint. The Court then considers FCA's additional evidence provided in the Notice of Removal and finds that FCA has shown by a preponderance of evidence that the amount in controversy is higher than $75,000.

    **a. The Amount in Controversy Is Unclear from the Face of the Complaint**

    Plaintiff specifies a monetary amount only once in the complaint by alleging that "Plaintiff

---

³ FCA alleges, and Plaintiff does not dispute, that the parties are diverse. Opp'n at 7.

suffered damages in a sum to be proven at trial in an amount that is not less than $25,001.00." Compl. ¶ 10. Plaintiff also "seeks the remedies provided in California Civil Code section 1794(b)(1), including the entire contract price" *Id.* ¶ 127. Moreover, Plaintiff seeks civil penalties and alleges that "Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (c)," *id.* ¶ 121, and "subdivision (e)," *id.* ¶ 122; *see also id.* at 25-26 (Prayer for Relief). FCA argues that these allegations suffice to show that the amount in controversy "easily exceeds $75,000" because Plaintiff has alleged at least $25,000 in actual damages and seeks civil penalties twice that amount. Opp'n at 8-10. Plaintiff disagrees. According to Plaintiff, the allegation of $25,000.01 "references Plaintiffs' total damages" which includes actual damages, civil penalties, attorney's fees and punitive damages. Mot. at 5.

Plaintiff's allegations in the complaint do not suffice to meet the amount in controversy requirement. First, where a damages estimate is included in the body of the complaint, like here, and "is not repeated in the Prayer for Relief the complaint fails to allege a sufficiently specific total amount in controversy." *Bourland v. Ford Motor Co.*, No. 5:19-cv-08456-EJD, 2020 WL 5797915, at *3 (N.D. Cal. Sept. 29, 2020) (cleaned up). Moreover, "[n]umerous district courts in this Circuit have concluded that Plaintiff['s] Complaint language – i.e., that Plaintiff[] suffered 'damages in an amount that is not less than $25,001.00' – is too speculative to conclude that the amount in controversy is satisfied." *Cox v. Kia Motors America, Inc.*, No. 20-cv-02380-BLF, 2020 WL 5814518, at *2 (N.D. Cal. Sept. 30, 2020) (collecting cases). These courts have concluded that the term "damages" did not automatically mean "actual damages," but could refer to the total amount in controversy, including civil penalties. *Id.*; *see, e.g.*, *Feichtmann v. FCA US LLC,* No. 5:20-CV-01790-EJD, 2020 WL 3277479, at *3 (N.D. Cal. June 18, 2020) ("In the absence of any contradictory allegations in the Complaint, the Court accepts Plaintiff's explanation that the $25,001.00 figure represents the combined total of actual damages and civil penalties.").

So too here. Plaintiff's damages estimate is only in the body of the complaint, and not in the Prayer for Relief. *See Bourland*, 2020 WL 5797915, at *3. Furthermore, the complaint uses language that courts have uniformly found to be too speculative. *See, e.g.*, *Steeg v. Ford Motor*

9

*Co.*, No. 19-CV-05833-LHK, 2020 WL 2121508, at *3 (N.D. Cal. May 5, 2020) (finding substantially similar language in the complaint to be too speculative). Accordingly, FCA fails to show the complaint on its face alleges an amount in controversy in excess of $75,000.

Ignoring this uniform case law, FCA instead argues the Court should follow the lead of two cases from this district, *Bernstein* and *Covarrubias*, that concluded that the amount in controversy was clear from the face of the complaint. Opp'n at 9-10 (citing *Bernstein v. BMW of N. Am., LLC*, No. 18-CV-01801-JSC, 2018 WL 2210683, at *1 (N.D. Cal. May 15, 2018) and *Covarrubias v. Ford Motor Co.*, No. 19-CV-01832-EMC, 2019 WL 2866046, at *6. (N.D. Cal. July 3, 2019)). However, neither case is persuasive for several reasons.[4]

As several district courts have explained, the *Bernstein* complaint alleged that the amount in controversy exceeded $25,000 and explicitly sought damages *in addition* to this amount. *See, e.g.*, *Schneider v. Ford Motor Co.*, 441 F. Supp. 3d 909, 913 (N.D. Cal. 2020) (distinguishing *Bernstein* from a complaint alleging that "Plaintiff suffered damages in a sum 'not less than $25,001.00'"); *Bourland*, 2020 WL 5797915, at *3 (same). In contrast, here, it is not clear from the face of the complaint whether the items listed in the Prayer for Relief are included within, or separate, from the $25,001 figure alleged in the complaint.

Relying on *Covarrubias*, FCA also argues that Plaintiff's claim that his total damages are in an amount not less than $25,001.00 is contradicted by his own pleadings because Plaintiff is seeking the entire contract price of the Vehicle. Opp'n at 10 (citing *Covarrubias*, 2019 WL 2866046, at *6). FCA reasons that since the contract price was $53,916.34, there is no ambiguity in the complaint, and Plaintiff must be seeking actual damages in excess of $25,000. *Id.* Although the Court acknowledges that the district court in *Covarrubias* so reasoned, the Court respectfully disagrees. The Ninth Circuit has explained that at this step, the amount in controversy must be clear from the face of the *complaint*. *See Guglielmino*, 506 F.3d at 699 (explaining the different

---

[4] FCA also relies on a number of decisions concluding that civil penalties are not damages in non-car warranty cases. *See* Opp'n at 8-10. Because these cases did not involve auto warranty claims, like here, they fail to shed light on whether the allegations in this complaint are ambiguous.

10
Case No. 21-CV-01230-LHK
ORDER DENYING PLAINTIFF'S MOTION TO REMAND

standards of proof for the removing defendant and noting that under the "legal certainty" test the court looks to the allegations of the complaint filed in state court). In the instant case, Plaintiff does not allege the contract price in the complaint. Accordingly, looking solely at the complaint, the Court cannot determine that Plaintiff's claim is contradicted by his own pleadings.

Moreover, the *Covarrubias* court recently concluded that "the weight of authority in this Circuit" supports the conclusion that a complaint only alleging damages in an amount no less than $25,001.00 is ambiguous. *See Cox v. Kia Motors America, Inc.*, No. 20-cv-02380-BLF, 2020 WL 5814518, at *2-3 (N.D. Cal. Sept. 30, 2020) ("Given the multiplicity of cases finding that an allegation of 'damages' in an amount not less than $25,001.00 could encompass civil penalties, and the [Plaintiffs'] assertion that they intended that meaning, this Court concludes that the SAC is ambiguous and does not clearly show that the amount in controversy exceeds $50,000.")

Because the amount in controversy is unclear from the face of the complaint, the Court must determine whether FCA has met its burden to show by a preponderance of the evidence that the amount in controversy is greater than $75,000.

### b. Preponderance of the Evidence Test

Relying on additional evidence in the Notice of Removal, FCA argues that "it is more likely than not" that the damages and penalties pled in Plaintiff's complaint exceed $75,000. Plaintiff seeks actual damages, restitution, civil penalties, and other relief under the Song-Beverly Act, "including the entire contract price," Compl. ¶ 127. FCA attaches to its Notice of Removal the Retail Installment Sales Contract which shows that the purchase price of the Vehicle was $53,916.34. *See* ECF No. 1-4. Because Plaintiff also seeks civil penalties in an amount of twice his actual damages, FCA argues that the amount in controversy is easily satisfied by adding the purchase price ($53,916.34) to the civil penalties ($107,832.68). *See* Opp'n at 10-11. Plaintiff has three rejoinders. First, he argues that "this estimation of Plaintiff's actual damages is completely speculative, and is not supported by facts or evidence." Mot. at 6. Second, Plaintiff points out that any restitution must be offset by a "mileage offset" under the statute. *Id*. Third, Plaintiff argues that the statute permits recovery of civil penalties "of *up to* two times the amount of actual

11
Case No. 21-CV-01230-LHK
ORDER DENYING PLAINTIFF'S MOTION TO REMAND

1    damages" and FCA fails to show that Plaintiff is entitled to such an amount. *Id.* at 7-8. However,

2    Plaintiff failed to file a reply. By failing to address any of the arguments raised by FCA in its

3    opposition to Plaintiff's motion for remand, Plaintiff effectively concedes these points. The Court

4    first addresses the question of actual damages then the civil penalties.

### i. FCA Has Sufficiently Shown the Amount in Controversy is Likely Greater than $75,000

Under the Song-Beverly Act restitution is measured by "an amount equal to the actual price paid or payable by the buyer, . . . including any collateral charges such as sales or use tax, license fees, registration fees, and other official fees . . . ." Cal. Civ. Code § 1793.2(d)(2)(B). The manufacturer is authorized to reduce the amount payable to the buyer "by that amount directly attributable to use by the buyer prior to the time the buyer first delivered the vehicle to the manufacturer or distributor, or its authorized service and repair facility for correction of the problem that gave rise to the nonconformity." Cal. Civ. Code § 1793.2(d)(2)(C).

To establish the actual price paid or payable under the statute, FCA relies on an undisputed Retail Installment Sales Contract. Plaintiff purchased the Vehicle for $53,916.34 based on the Retail Installment Sales Contract. *See* Opp'n at 10-11. Courts routinely find that an undisputed Retail Installment Sales Contract can establish actual damages. *See, e.g.*, *Messih v. Mercedes-Benz*, 2021 WL 2588977, at *4 (accepting the Retail Installment Sales Contract as valid evidence to determine actual damages). However, "[u]nder the Song–Beverly Act, the actual price paid or payable by the buyer [only] includes any *paid* finance charges." *Alvarado v. FCA US, LLC*, No. EDCV 17-505 JGB (DTBx), 2017 WL 2495495, at *4 (C.D. Cal. Jun. 8, 2017) (emphasis added). Because the record does not show whether Plaintiff has made all the installment payments, the Court cannot determine whether Plaintiff has paid all the finance charges that are included in the total sale price of the Vehicle. Accordingly, the Court follows other district courts in concluding that it is more appropriate to use the total cash price listed in the Retail Sales Installment Contract: $43,225.00[5], ECF No. 1-4. *See Messih v. Mercedes-Benz*, 2021 WL 2588977, at *4 (noting that

---

[5] Notably this amount does not include the sales tax ($3,626.79), document fee ($80), optional

district courts "have found total cash price appropriate in calculating actual damages sought under the Song-Beverly Act.").

Relying on *Chajon v. Ford Motor Company,* No. 2:18-cv-10533-RGK(RAOx), 2019 WL 994019, at *1 (C.D. Cal., Jan. 8, 2019), Plaintiff argues that the actual damages are too speculative. However, *Chajon* is inapposite for two reasons. First, unlike here, defendants in *Chajon* could not locate the sales contract, and only relied on the Manufacturer's Retail Suggested Price. *Chajon*, 2019 WL 994019, at *1. The *Chajon* court noted that without the contract it was impossible to know the sale amount and therefore the ultimate amount in controversy. *Id.* Relying on *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1008 (N.D. Cal. 2002), the *Chajon* court also stated that "a plaintiff's recovery is limited to the actual payment amount to the seller" under the Song-Beverly Act. *Id.* Yet, as other courts have explained, *Brady* so concluded "in the context of a lease" and does not apply when plaintiff purchased the vehicle. *See Messih v. Mercedes-Benz USA, LLC*, No. 21-cv-03032-WHO, 2021 WL 2588977, at *4 n.5 (N.D. Cal. June 24, 2021). Accordingly, *Chajon* is inapplicable here, where Plaintiff has purchased the vehicle, and Defendant FCA has provided an undisputed sales contract as evidence.

Turning to the mileage offset, the Court first finds that the restitution amount must include the "mileage offset"—which is the amount directly attributable to Plaintiff's use of his Vehicle "prior to the first repair or attempted repair." *Id.* at *5 (stating that the statute requires a "mileage offset"). Although FCA has not calculated the mileage offset in the Notice of Remand, this is not fatal because FCA provides the calculations in FCA's opposition to the motion for remand. *See id.* (calculating the mileage offset reduction in an opposition to the motion for remand is sufficient). The Retail Sales Installment Contract also lists the odometer reading as 194 miles at the time of purchase. ECF No. 1-4. FCA provides evidence of two vehicle repair records when Plaintiff first presented the Vehicle for defects Plaintiff now raises in the complaint.[6] *See* ECF No. 19-2. These

---

services contract ($2,495), and government fees ($399.75). ECF No. 1-4.
[6] Consideration of this evidence is proper because "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *See Dart Cherokee*, 574 U.S. at 554. Once Plaintiff contested the allegations in his motion to

13
Case No. 21-CV-01230-LHK
ORDER DENYING PLAINTIFF'S MOTION TO REMAND

repair records show the Vehicle's odometer read 2,344 and 7,213, respectively. *See* Opp'n at 13. Plaintiff pleads the same mileage readings in the complaint under the relevant vehicle repair history. Compl. ¶ 107-108. Using the most recent repair history provided by FCA, and subtracting the mileage at the time of purchase, Plaintiff's amount directly attributable to his use prior to presenting the vehicle for repair is at most 7,019 miles (7,213 minus 194 miles). Pursuant to the statutory formula, the proper mileage offset reduction is $2,528.30, as follows: 7,019/120,000 x $43,225.00.[7] Subtracting the mileage offset from the total cash price, the Court arrives at an estimate of $40,696.70.

Because Plaintiff did not file a reply, he does not rebut FCA's vehicle repair evidence or mileage offset calculations. As such, all the cases on which Plaintiff relies in the instant motion to remand are inapposite because they involved instances where defendants failed to provide *any* evidence of the appropriate mileage offset, or where the court concluded that the mileage offset reduced the actual damages to a level where the amount in controversy was less than $75,000. *See Mullin v. FCA US, LLC*, 2020 WL 2509081, at *3 (C.D. Cal. May 14, 2020) (finding defendants "failed to meet their burden of showing Plaintiff's actual damages based on the purchase price of the vehicle" because they "neglected to take the mileage offset into account."); *Quinones v. FCA US LLC*, No. 2:20-CV-06144-RGK-JPR, 2020 WL 4437482, at *1 (C.D. Cal. July 31, 2020) (finding that "[w]ithout information about Plaintiff's use of the vehicle (such as the number of miles driven), the Court is left with considerable doubt as to the amount in controversy."); *Schneider v. Ford Motor Co.*, No. 5:19-cv-05545-EJD, 2020 WL 9915131, at *4 (N.D. Cal. Mar. 2, 2020) (finding defendant's evidence of vehicle repair mileage established an offset that reduced the amount in controversy below the necessary $75,000 threshold).

Accordingly, here FCA's unchallenged and unrebutted submissions are sufficient to

---

remand, FCA submitted the vehicle repair records as relevant evidence in its opposition. *Id.* (explaining that evidence is required only when "a defendant's assertion of the amount in controversy is challenged").

[7] Because the Court uses the total cash price, and not the total sales price, the Court arrives at a different mileage offset amount than FCA.

14
Case No. 21-CV-01230-LHK
ORDER DENYING PLAINTIFF'S MOTION TO REMAND

establish by a preponderance of the evidence that Plaintiff's Song-Beverly Act actual damages are, after taking the mileage offset and other deductions into account, at least $40,696.70.

### ii. Civil Penalties

Plaintiff seeks civil penalties "in the amount of two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (c) or (e)." Compl. at 25; *see also id.* ¶¶ 121-22. FCA calculates that the maximum civil penalty award would be twice the actual damages sought by plaintiff. Opp'n at 14. Based on the Court's conclusion above, this would result in a maximum civil penalty of at least $81,393.40. Plaintiff argues that the Act merely permits recovery up to twice the amount of actual damages and FCA has provided no evidence that Plaintiff is entitled to the maximum penalties, or any penalties at all. Mot. at 7-8.

In in estimating the "amount in controversy" the Court "assum[es] plaintiff's allegations are true." *Carillo v. FCA USA, LLC*, No. 2:21-cv-01229-CAS-JEMx, 2021 WL 2711138, at *6 (C.D. Cal. June 29, 2021) (citing *Campbell v. Vitran Express, Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012)). Here, plaintiff alleges that FCA's "failure to comply with its obligations under Civil Code section 1793.2, subdivision (d) was willful, in that Defendant and its representative were aware that they were unable to service or repair the vehicle to conform to the applicable express warranties after a reasonable number of repair attempts, yet Defendant failed and refused to promptly replace the vehicle or make restitution." Compl. ¶ 121; *see also id.* ¶¶ 128, 131. Thus, the Court will include the maximum amount of civil penalties in the amount in controversy estimate. *See Carillo*, 2021 WL 2711138 at *6 (including maximum amount of civil penalties when determining the amount in controversy)*; see also Park v. Jaguar Land Rover N. Am., LLC*, No. 20-CV-00242-BAS-MSB, 2020 WL 3567275, at *4 (S.D. Cal. July 1, 2020) ("Plaintiff's own allegations support the conclusion that the maximum amount of civil penalties is properly included in the amount in controversy determination").

The Court finds that the maximum recoverable civil penalties should be considered for purposes of determining the amount in controversy "because that is what Plaintiff put in controversy." *Cox v. FCA US LLC*, No. 20-CV-03808-WHO, 2020 WL 5046103, at *2 (N.D. Cal.

15
Case No. 21-CV-01230-LHK
ORDER DENYING PLAINTIFF'S MOTION TO REMAND

Aug. 24, 2020); *see also Verastegui v. Ford Motor Co.*, No. 19-cv-04806-BLF, 2020 WL 598516 at *3 (N.D. Cal. Feb. 7, 2020) ("That Plaintiff now asserts he might recover damages that are less than what he seeks in his Complaint does not change the fact that his Complaint *put in controversy far more than that*." (cleaned up)). Plaintiff's request that the Court disregard Plaintiff's own allegations in his complaint is unpersuasive.

The Court has calculated the amount of actual damages available as restitution by subtracting the mileage offset of $2,528.30 from the lowest possible total cash price of $43,225.00. This results in at least $40,696.70. Under the Song-Beverly Act, the maximum available penalty is twice the amount of actual damages, here at least $81,393.40 ($40,696.70 x 2). This results in a sum of at least $122,090.10. As such, the Court finds that the $75,000 jurisdictional requirement is satisfied and DENIES the motion to remand for lack of subject matter jurisdiction.[8]

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion to remand this action to the California Superior Court for Santa Clara County is DENIED.

**IT IS SO ORDERED.**

Dated: October 20, 2021

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

---

[8] Because the Court concludes that the jurisdictional amount has been satisfied, it need not consider the parties' dispute as to whether FCA has met its burden to demonstrate the amount of attorneys' fees that are potentially recoverable.